IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOUBOU CAMARA, | : | No. 3:26cv237 |
| Petitioner | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG A. LOWE, in his official | : | |
| capacity as Warden of Pike County | : | |
| Correctional Facility in Lords Valley, | : | |
| PA; BRIAN McSHANE, in his official | : | |
| capacity as Acting Philadelphia | : | |
| Field Office Director, United States | : | |
| Immigration and Customs | : | |
| Enforcement; TODD LYONS, in his | : | |
| official capacity as Acting Director | : | |
| of Immigration and Customs | : | |
| Enforcement; KRISTI NOEM, in her | : | |
| official capacity as Secretary of | : | |
| the Department of Homeland | : | |
| Security; THE U.S. DEPARTMENT | : | |
| OF HOMELAND SECURITY; | : | |
| PAMELA BONDI, Attorney General | : | |
| of the United States, | : | |
| Respondents | : | |

## MEMORANDUM ORDER

Before the court is Boubou Camara's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The petition asserts that Camara has been misclassified under 8 U.S.C. § 1225(b)(2)(A), that his due process rights have been violated, and that he is entitled to immediate release from immigration

detention.  After reviewing Camara's circumstances on an individual basis, the court will reach the same result as it has on several prior occasions with other petitioners.[1]

Petitioner is a native of Mauritania.  He entered the United States at the southern border in December 2023.[2]  He was apprehended by the United States Customs and Border Protection and briefly detained near Yuma, Arizona.  He was charged with violation of Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).  On December 6, 2023, he was released on his own recognizance and with a hearing date approximately 18 months later.  That is, ICE instructed the petitioner to appear before an immigration judge ("IJ") on June 4, 2025 in Philadelphia.  There is no evidence that Camara failed to appear at that hearing.

On September 24, 2025, Camara reported to the ICE Enforcement and Removal Operations Field Office in Philadelphia for a scheduled check-in.

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Camara filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction.  Petitioner asserts that his continued detention violates his right to due process. He also asserts that the wrong provision of the INA is being used to justify his potentially indefinite detention.  Thus, the court has habeas jurisdiction over Camara's petition.  Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

[2] These facts are derived from Camara's petition, (Doc. 1), and from the administrative records provided by the parties, (Docs. 1-4 to 1-5 and Docs. 4-2 to 4-5).

2

There, he was served with a warrant for arrest from an ICE officer. Camara refused the government's offer of $1,000 to voluntarily depart the country. He was taken into custody and now faces an additional charge of inadmissibility under INA§ 212(a)(7)(A)(i)(I). ICE subsequently moved Camara to the Pike County Correctional Facility ("Pike CCF") in Lords Valley, Pennsylvania and he has been detained there for approximately five months.

Camara's detention is the product of a revised policy under which individuals present in the United States without admission are treated as applicants for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) rather than discretionary detention under § 1226(a). Because Camara is detained under 8 U.S.C. § 1225(b)(2)(A), according to the respondents, he is ineligible for a bond hearing.

This case, like many others before it, turns on whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) applies to the petitioner. There is no decision of the Supreme Court or the Third Circuit Court of Appeals to guide the analysis.[3] Most district court decisions to address the issue hold that individuals like Camara are not subject to mandatory detention under Section 1225(b)(2)(A), including rulings

---

[3] A split panel of the Fifth Circuit Court of Appeals agrees with the respondents' view of Section 1225. See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026). The dissenting opinion is more persuasive. Id. at 508–21 (Douglas, J.).

3

by the jurists in the Middle District of Pennsylvania. [4]   The issues here have been approached from just about every angle possible.  Most decisions reach the same conclusion, and the undersigned will not deviate from that majority view in this case. Camara's detention under Section 1225(b)(2)(A) violates the INA and due process.  Therefore, the petition for a writ of habeas corpus will be granted. Camara will be released.

Briefly, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).   Individuals detained under Section 1225 are not entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito, J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

*"Applicant for Admission"* — Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United

---

[4] See Meeran v. Rose, No. 3:26CV187, 2026 WL 540379, at *2 n.3 (M.D. Pa. Feb. 26, 2026) (collecting cases); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *4 n.4 (M.D. Pa. Feb. 26, 2026) (collecting cases).

States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Definitionally, all unadmitted persons, including Camara, are "applicants for admission."

*"Alien Seeking Admission"* – Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225.  Under the view adopted by the government every "applicant for admission" is an "alien seeking admission." This would subject all unadmitted aliens to mandatory detention without bond whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration detention, the border is now everywhere." Buenrostro-Mendez, 166 F.4th at 520 (Douglas, J., dissenting op.).

In contrast, the consensus district court view is that the phrase "alien seeking admission" does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.) (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (Mariani, J.) (citations omitted).

5

As these district court cases and the <u>Buenrostro-Mendez</u> dissent have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) as arising from a recently-expanded, redundant statutory provision. <u>See Patel</u>, 2025 WL 3516865 at *5 (citing <u>Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia</u>, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); <u>Buenrostro-Mendez,</u> 166 F.4th at 509–16 (Douglas, J., dissenting op.).

Here, Camara was residing in the interior of the United States for approximately 22 months when he was re-arrested and re-detained. Consequently, a reading of Section 1225(b)(2)(A) against petitioner's circumstances reflects that this statute does not apply to him. "[T]he difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." <u>Castanon-Nava v. U.S. Dep't of Homeland Sec.</u>, 161 F.4th 1048, 1061 (7th Cir. 2025).

At this point, Camara's detention would be governed by Section 1226(a). <u>Jennings</u>, 583 U.S. at 288 (Alito, J., plurality op.). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed

6

from the United States.' " Id. (quoting 8 U.S.C. § 1226(a)).  Pending such decision, the Attorney General may: 1) "continue to detain the arrested alien"; and 2) "may release the alien on...bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or...conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2); see also 8 C.F.R. §§ 1003.19, 1236.1(c)(8), 1236.1(d)(1).  "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.' " Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019)).

Camara, however, will be released.  He enjoys the protections of the Due Process Clause of the Fifth Amendment.  Trump v. J. G. G., 604 U.S. 670, 673 (2025).  Whether Camara's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates procedural due process requires a consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Each factor favors Camara.  First, his private interest is the interest in not being physically detained by the government, which "is the most elemental of

7

liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted). Second, he has been detained erroneously under Section 1225(b) without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025); Quispe, 2025 WL 3537279, at *7 (citations omitted). Third, the government's interest in detaining noncitizens "to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community" is important, but there is no indication that Camara is a convicted criminal or engaged in any criminal activity. See Quispe, 2025 WL 3537279, at *7. In response to the petition, the government has not provided any information suggesting that Camara is a danger to the community or a flight risk. Upon entry to this country, the government released the petitioner on his own recognizance. That will happen again today.

8

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008).  Camara's continued detention without bond under Section 1225(b)(2)(A) violates his due process rights. Therefore, respondents shall immediately release Camara from their custody because he was unlawfully detained without the opportunity for a bond hearing.[5] See Kashranov v. Jamison, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) (Wolson, J).

Furthermore, the respondents, including DHS and ICE will be permanently enjoined from re-detaining Camara under 8 U.S.C. § 1225(b)(2)(A). Id. Respondents will be temporarily enjoined from re-arresting Camara for a period of 14 days to ensure that this habeas remedy is effective. Id.  Respondents, including ICE, may not impose any other restrictions on Camara's release, including any form of body-worn electronic monitoring.  Camara may move to reopen this matter if the government later seeks to detain him under Section 1226(a) and fails to schedule a timely bond hearing.[6]

---

[5] To the extent that Craig Lowe, Warden of Pike CCF is the only proper respondent in this matter, Lowe is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1 n.1 (M.D. Pa. Dec. 31, 2025).

[6] Camara's request for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 is not yet ripe for disposition.  The Third Circuit recently confirmed that a habeas

Accordingly, it is hereby **ORDERED** that:

1) Boubou Camara's petition for writ of habeas corpus, (Doc. 1), is

   **GRANTED**;

2) Respondents shall **immediately** release Camara from their custody;

3) Within 72 hours, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Camara has been released;

4) Respondents shall release Camara under the same conditions that existed prior to his detention, including, release: (1) within the Commonwealth of Pennsylvania; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody,

---

proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., No. 24-2990, 2026 WL 263483, at *1–2, *10 (3d Cir. Feb. 2, 2026). Camara will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

10

possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

5) Respondents are permanently enjoined from re-detaining Camara under 8 U.S.C. § 1225(b)(2)(A);

6) Respondents are temporarily enjoined from re-arresting Camara for a period of 14 days to ensure that this habeas remedy is effective;

7) Should respondents detain Camara pursuant to 8 U.S.C. § 1226(a), petitioner may move to reopen this matter if the government fails to schedule a timely bond hearing in which an IJ assesses whether he poses a flight risk or a danger to the community;

8) Camara may file a motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 within thirty (30) days of final judgment; and

9) The Clerk of Court is directed to close this case.

Date: 3/12/26

BY THE COURT:

_____

JUDGE JULIA K. MUNLEY
United States District Court